**H. L. NICKELSON, d/b/a The Armoloy Company, Plaintiff-Appellant,**

v.

**GENERAL MOTORS CORPORATION and Donald E. Crull, Defendants-Appellees.**

**No. 15443.**

United States Court of Appeals Seventh Circuit.

June 1, 1966.

The liability issue was tried before the court without a jury.

The Court filed findings of fact and conclusions of law holding that the plaintiff had no protectible trade secret and that therefore there had been no breach of a relationship of trust and confidence by defendant Crull and no breach of faith by defendant General Motors.

Chrome plating is a process by which a layer of pure chromium is deposited upon a conductor by means of passing an electric current through an electrolyte containing a mixture of chromic acid, water and sulphuric acid, or a sulphuric acid radical known as sulphate.

Chrome plating has been practiced for many years but prior to 1939 or 1940, the chrome that was plated on metal tools would crack or peel off under pressure. The method used in chrome plating machine or cutting tools is known as "hard chrome."

Defendant Crull first became acquainted with chrome plating while employed by the Aladdin Lamp Company from 1933 to 1937. Crull's next chrome plating experience was from 1941 through 1953 during his employment with the Aero-Products Division of defendant General Motors. He was at first a plater's helper, then a plater and finally a foreman in the plating department. Crull's primary job in Aero-Products' plating department involved the chrome plating of airplane propellers.

The plating of the propellers did not involve a vapor blast operation. However, in 1944, Crull became the foreman of the finish, file and burr room where vapor blast equipment was used for clean-up operations.

In 1953, Crull left Aero-Products to accept a job with the C. E. Foote Company of Dallas, Texas, but soon thereafter, Foote encountered financial difficulties. Crull then contacted G. A. Jaggers, the President of Monarch Manufacturing Company. Crull represented to Jaggers that he had a secret hard chrome process, and that it would take

William M. Osborn, Indianapolis, Ind., John W. McMackin, Fort Worth, Tex., Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., McGown, Godfrey, Logan & Decker, Fort Worth, Tex., for appellant.

Alan W. Boyd, Indianapolis, Ind., George W. Coombe, Jr., Detroit, Mich., Jerry P. Belknap, Robert L. McLaughlin, Indianapolis, Ind., for appellees, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

In this suit, plaintiff seeks damages and an injunction for defendants' alleged misappropriation and utilization in breach of confidence of plaintiff's "trade secret". The purported trade secret pertains to a process of chrome plating.

The District Court severed the issue of damages from the issue of liability.

$50,000 to purchase the equipment necessary to put the process in operation.

Monarch agreed to invest the necessary $50,000 and hired Crull to operate the proposed plant. Crull wrote down his chrome plating process and assigned all his right, title and interest therein to Monarch. The process was given the name "Armoloy Process", and a division of Monarch was set up as the "Armoloy Company."

In October 1955, Monarch merged with Fort Worth Steel and Machinery. The facilities of Armoloy Company were moved to the premises of the purchasing company where Crull continued to perform the same duties. On October 6, 1955, Crull and Jaggers executed an instrument whereby they agreed not to divulge the secrets of the "Armoloy Process" for a period of ten years, and assigned all their right, title and interest in the process to Monarch.

In 1957, Crull's brother-in-law, who was employed by Delco-Remy, suggested that Delco-Remy have its perishable tools treated with the "Armoloy Process." An agreement was made to process some test tools at no charge to Delco-Remy. The test proved successful. Delco-Remy sent tools to Armoloy through 1957 and until August 1958, the total invoices for such services amounting to $1,176.25.

In September 1958, the president of the Fort Worth Steel and Machinery Company decided to discontinue the unprofitable operations of the Armoloy Division. Crull immediately contacted Delco-Remy about employment. Delco-Remy hired Crull on October 2, 1958, and directed him to begin work November 3, 1958.

On November 3, Crull began work as foreman of Delco-Remy's chrome plating department. The process used at Delco-Remy was called the "Remaloy Process."

During October 1958, the plaintiff herein had negotiated the purchase of the Armoloy Company. Plaintiff testified he had contacted Crull with the idea of obtaining his services, but Crull informed him that he had accepted employment elsewhere.

On November 3, 1958, plaintiff wrote all the customers of the Armoloy Company, including Delco-Remy, soliciting their business and stating that he had purchased the "Armoloy Process", and expected the plant to be in operation within two weeks.

The contested issues before us are— 1) Was the "Armoloy Process" which was owned by plaintiff at the time of the trial, a protectible trade secret, and 2) If it were, did defendant Crull break a relationship of trust in disclosing it to Delco-Remy, and was Delco-Remy's utilization of the process a breach of faith?

In claiming that the "Armoloy Process" of chrome plating constituted a trade secret, plaintiff seems to rely heavily upon the step of vapor blasting both before and after plating. Vapor blasting is the discharge of fine material by compressed air against the surface of the tool or other article being plated. It is substantially a sand blast mixed with water but using a finer grit. It is also known as liquid blasting, wet blasting, vapor honing and liquid honing.

Vapor blasting first came upon the market in the early 1940's. It was installed at Aero-Products in 1944. Crull was not responsible for the installation. Crull was then the foreman of one of three shifts, and the foremen of the other two shifts performed substantially the same duties as Crull. It was a part of the duties of each foreman to train men under him to plate.

The District Court found that the training, experience and ability of a plater contribute immeasurably to the finished product as the plater must exercise his judgment during the various steps of the method's application. It is undenied that except for the skill he had acquired at Aladdin Lamp, all of Crull's training and skill were acquired as an employee of General Motors at its Aero-Products Division.

Plaintiff recognizes that he had the burden of proving the existence and the

ownership of a trade secret. Plaintiff does not claim that any one or more of the steps in the "Armoloy Process" were unknown or had never been used in the chrome plating industry. He does claim, however, that the steps in the process had never previously been combined in such a manner, and that the combination resulted in a superior product and a trade secret.

██ It is, of course, possible that a combination of commonly known elements or steps can be a trade secret, but such must represent a valuable contribution arising from the independent efforts of the one claiming to have devised the new combination. Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 207 F.2d 912, 921. The combination must differ materially from other methods taught by the prior art. Trivial advances or differences in formulas or process operations are not protectible as trade secrets. Ellis, Trade Secrets, § 15, page 31.

The District Court found in its detailed findings of fact that all of the steps used at Delco-Remy after Crull's employment there were the same steps which previously had been used and specified by the Process Engineering Department with the exception of the vapor blast after plating and the cold silicone oil dip. The latter was a rust preventative and was never a part of the "Armoloy Process."

Hence, the only conceivable combination issue before us is whether the second vapor blast in combination with the steps previously used by Delco-Remy was the trade secret of plaintiff-appellant. The Court found on this point that while the second vapor blast had not been specified by the plating department prior to Crull's employment, it was commonly used elsewhere in the hard chrome plating industry.

██ The Court also found, as facts, that all of the steps specified in the "Armoloy Process" were known in and used by the chrome plating industry before Crull was employed by Monarch Manufacturing Company. The Court further found that the process used at Delco-Remy after Crull's employment there, did not utilize anything not previously known to defendant General Motors.

The Restatement of the Law of Torts, Section 757, Comment (b) states: "The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret."

The findings of the District Court are well supported by the evidence in this record. We certainly can find no basis for holding they are clearly erroneous. We do not pass upon the evidence *de novo*.

The judgment of the District Court is Affirmed.